UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JORDAN GALLACHER, and MATTHEW KOLESAR,<br><br>Plaintiffs,<br><br>v.<br><br>PLUTO, INC.,<br><br>Defendant. | Case No. 2:21-cv-334 |

**COMPLAINT**

Plaintiffs Jordan Gallacher and Matthew Kolesar (collectively, "Plaintiffs"), through their undersigned counsel, bring this complaint against Pluto, Inc. ("Defendant"), and assert as follows:

**INTRODUCTION**

1. Plaintiffs bring this action against Defendant under Title III of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12101 *et seq.* and its implementing regulations, in connection with Defendant's failure to offer blind patrons the full and equal enjoyment of its streaming entertainment services.

2. Defendant offers consumers video streaming services through its website and mobile application, Pluto TV, where consumers can access live TV and a library of TV shows and movies to watch at their leisure.

3. Defendant is responsible for its policies, practices, and procedures concerning its streaming services' development and maintenance.

4. Defendant, however, fails to offer audio description tracks – an audio track that blind and visually impaired people use to experience the exclusively visual portions of the show or movie enjoyed by consumers without visual impairments - with its video content.

5. Plaintiffs are individuals with visual disabilities who, at all times relevant for purposes of this action, have been legally disabled, as defined by the ADA, 42 U.S.C. § 12102(2).

6. Plaintiffs and other customers with visual disabilities who want to enjoy videos with audio descriptions must use streaming services other than Defendant's.

7. Although audio descriptions are widely available for TV shows and movies, Defendant refuses to make audio descriptions available to its consumers through its streaming services.

8. Because customers with visual disabilities cannot equally enjoy TV shows or movies without audio descriptions, Defendant deprives them of the same options, privileges, and advantages that it offers to other customers.

9. Plaintiffs seek the following declaratory and injunctive relief: (1) a declaration that Defendant's lack of audio descriptions violates the ADA as described in this complaint; and, (2) an injunction requiring Defendant to provide audio descriptions and a mechanism to choose audio descriptions for its streaming services so that they are fully and independently accessible to blind and vision impaired individuals.

**JURISDICTION AND VENUE**

10. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

11. Plaintiffs' claims asserted in this complaint arose in this judicial district, and Defendant does substantial business in this judicial district.

12. Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2) in that this is the judicial district in which a substantial part of the events and/or omissions at issue occurred.

## PARTIES

13. Plaintiff Jordan Gallacher is and, at all times relevant hereto, was a resident of this District. Plaintiff is legally blind and is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2) and the regulations implementing the ADA set forth at 28 CFR §§ 36.101, *et seq*. Mr. Gallacher knows that audio descriptions are not available through Defendant's streaming services. He has not subscribed to Defendant's streaming services because he knows trying to use them would be futile.

14. Plaintiff Matthew Kolesar is and, at all times relevant hereto, was a resident of this District. Plaintiff is legally blind and is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2) and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*. Mr. Kolesar knows that audio descriptions are not available through Defendant's streaming services. He has not subscribed to Defendant's streaming services because he knows trying to use them would be futile.

15. Defendant Pluto, Inc., provides streaming television services with its headquarters in West Hollywood, California.

## FACTUAL ALLEGATIONS

16. Defendant offers digital video-streaming services to millions of Americans through its platform, Pluto TV.

17. Through Pluto TV's streaming services, users can "[d]rop in for 100s of channels of hit movies, binge-worthy TV shows, the latest breaking news, live sports and more. Anytime. Always for free."[1]

18. Users can watch Pluto TV live or browse Pluto TV's vast video selection, select a program to stream, and start watching in the comfort of their own home within a matter of minutes.

19. Consumers can access Pluto TV's streaming services with or without a Pluto TV account.

20. Pluto TV's streaming services are available on smart TVs, streaming devices, mobile or tablet applications, and through web browsers.

21. Pluto TV is free to use but contains advertisements.

22. Though Defendant may have centralized policies regarding the maintenance and operation of its streaming services, Defendant has never had a plan or policy that is reasonably calculated to make its streaming services fully accessible to, and independently made usable by, individuals with visual disabilities.

23. Pluto TV's blind and visually impaired users and potential users do not have full access to Pluto TV's video-streaming services because Defendant does not provide audio description tracks for video content provided on its platform.

24. Audio description is an auxiliary aid that allows blind and visually impaired people to have a full audio-visual experience.[2] It is an audio track that narrates the key visual elements of video content so that blind and visually impaired people can experience significant actions and

---

[1] https://pluto.tv/welcome (last accessed March 11, 2021).
[2] Congress defined auxiliary aids and services to include "…taped texts, or other effective methods of making visually delivered materials available to individuals with visual impairments[.]" 42 U.S.C. § 12103(1)(B).

text-based information provided onscreen. Audio descriptions provide, for example, descriptions of scenes, settings, costumes, body language, and other non-verbal cues that would otherwise be missed by a person who is blind or visually impaired, but can be seen by those without visual impairment.

25. Similar to closed captioning and subtitles, video providers offer audio description tracks as an option for the consumer to select during TV shows or movies.

26. Pluto TV does not provide audio description tracks as an option for its users.

27. Because Pluto TV does not provide audio description tracks, Plaintiffs have not signed up for its streaming services that they otherwise would be able to enjoy.

28. Plaintiffs are frustrated that Defendant denies them and other customers with visual disabilities the same convenience of streaming TV shows and movies that it provides to customers without visual disabilities.

29. This technology is not novel or unique. Netflix, Amazon Prime, and Hulu are just a few examples of streaming services that offer audio descriptions for their content. Major production studios also now provide audio description tracks for wide-released features, which are distributed with the film.

30. Pursuant to the Twenty-First Century Communications and Video Accessibility Act of 2010, many television channels are required to provide audio description for a certain number of hours of prime-time content. See 47 C.F.R. § 79.3.

31. Pluto TV has the ability to provide audio descriptions but chooses not to. Indeed, at the time this complaint was drafted, the movies Flight, Get Rich or Die Trying, and Shaft were available to stream over Pluto TV and Amazon Prime. All had audio description on Prime. None had audio description on Pluto TV.

32. Despite there being audio description tracks available for much of the content that Pluto TV offers, Defendant fails to provide such audio description tracks to its users.

33. Plaintiffs seek the same full and equal access to Defendant's streaming services that Defendant affords to all other customers.

34. Absent the relief requested in this matter, Plaintiffs and individuals with visual disabilities will continue to be denied full and equal enjoyment of Defendant's streaming services.

## SUBSTANTIVE VIOLATION

### Title III of the ADA, 42 U.S.C. § 12181 *et seq.*

35. The allegations set forth in the previous paragraphs are incorporated by reference.

36. Defendant's website and mobile application are places of public accommodation as defined by the ADA because they are, or are a part of, a "place of exhibition or entertainment," a "sales or rental establishment," a "service establishment," a "library," a "gallery," and/or a "place of public display or collection." 28 C.F.R. § 36.104; 42 U.S.C. § 12181(7), and Defendant owns, operates, and controls the website and mobile application. *See Gniewkowski v. Lettuce Entertain You Enter.*, 251 F. Supp. 3d 908 (W.D. Pa. 2017); *see also West v. Docusign, Inc.*, 2019 WL 3843054 (W.D. Pa. 2019).

37. Pursuant to Title III, "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

38. Title III of the ADA imposes statutory and regulatory requirements to ensure persons with disabilities are not excluded, denied services, segregated or otherwise treated differently than other individuals as a result of the absence of auxiliary aids and services. 42 U.S.C.

§ 12182(b)(2)(A); 28 C.F.R. §§ 36.303(a), (c). Under these provisions, public accommodations must furnish appropriate auxiliary aids and services that comply with their effective communication obligations. *Id.*

39. Thus, to the extent Defendant does not provide Plaintiffs with appropriate auxiliary aids or full and equal access to its website and mobile application, it has violated the ADA.

40. Auxiliary aids and services include "effective methods of making visually delivered materials available to individuals with visual impairments" such as audio description tracks. 42 U.S.C. § 12103(1)(B); *see also* 28 C.F.R. Part 36, Appendix C, Section 36.303 (noting that audio description services "may be considered appropriate auxiliary aids and services").

41. In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability. 28 C.F.R. §§ 36.303(c)(1)(ii). To this end, the Ninth Circuit has explained, "assistive technology is not frozen in time: as technology advances, [ ] accommodations should advance as well." *Enyart v. Nat'l Conference of Bar Examiners, Inc.*, 630 F.3d 1153, 1163 (9th Cir. 2011).

42. By failing to provide its entertainment content and services in a manner that is compatible with auxiliary aids, Defendant has engaged, directly, or through contractual, licensing, or other arrangements, in illegal disability discrimination, as defined by Title III, including without limitation:

    a) denying individuals with visual disabilities opportunities to participate in and benefit from the goods, content, and services available through its website and mobile application;

      b) affording individuals with visual disabilities access to its website and mobile application that is not equal to, or as effective as, that afforded to others;

      c) utilizing methods of administration that (i) have the effect of discriminating on the basis of disability; or (ii) perpetuate the discrimination of others who are subject to common administrative control;

      d) denying individuals with visual disabilities effective communication, thereby excluding or otherwise treating them differently than others; and/or

      e) failing to make reasonable modifications in policies, practices, or procedures where necessary to afford its services, privileges, advantages, or accommodations to individuals with visual disabilities.

43. Defendant has discriminated, and continues to discriminate, against Plaintiffs by failing to provide auxiliary aids and services such as audio descriptions and not making their website and mobile application fully accessible to, and independently usable by, individuals with visual disabilities.

44. Because of Defendant's denial of full and equal access to blind or visually impaired users, Plaintiffs have not signed up for or been able to enjoy Pluto TV's website and mobile application.

45. Defendant's ongoing violations of Title III have caused, and in the absence of an injunction will continue to cause, harm to Plaintiffs and other individuals with visual disabilities.

46. Plaintiffs' claims are warranted by existing law or by non-frivolous argument for extending, modifying, or reversing existing law or for establishing new law.

47. Pursuant to 42 U.S.C. § 12188 and the remedies, procedures and rights set forth and incorporated therein, Plaintiffs request relief as set forth below.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request judgment as follows:

  a. A Declaratory Judgment that at the commencement of this action Defendant was in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that Defendant took no action that was reasonably calculated to ensure that website and mobile application are fully accessible to, and independently usable by, individuals with visual disabilities;

  b. A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.504(a) which directs Defendant to take all steps necessary to bring its website and mobile application into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that its website and mobile application are fully accessible to, and independently usable by, blind individuals, and which further directs that the Court shall retain jurisdiction for a period to be determined to ensure that Defendant has adopted and is following an institutional policy that will in fact cause it to remain fully in compliance with the law;

  c. Payment of costs of suit;

  d. Payment of reasonable attorneys' fees, pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505, including costs of monitoring Defendant's compliance with the judgment. *See People Against Police Violence v. City of Pittsburgh*, 520 F.3d 226, 235 (3d Cir. 2008) ("This Court, like other Courts of Appeals, allows fees to be awarded for monitoring and enforcing Court orders and judgments."); *see also Gniewkowski v. Lettuce Entertain You Enterprises, Inc.*, Case No. 2:16-cv01898-

AJS (W.D. Pa. Jan. 11, 2018) (ECF 191); *see also Access Now, Inc. v. Lax World, LLC*, No. 1:17-cv-10976-DJC (D. Mass. Apr. 17, 2018) (ECF 11);

  e. Whatever other relief the Court deems just, equitable and appropriate; and

  f. An Order retaining jurisdiction over this case until Defendant has complied with the Court's Orders.

Dated: March 11, 2021        Respectfully Submitted,

               By: /s/ *R. Bruce Carlson*
               R. Bruce Carlson
               Nicholas A. Colella
               **CARLSON LYNCH LLP**
               1133 Penn Avenue, 5th Floor
               Pittsburgh, PA 15222
               Tel: 412-322-9243
               Fax: 412-231-0246
               bcarlson@carlsonlynch.com
               ncolella@carlsonlynch.com

               *Counsel for Plaintiffs*